UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY WICHMANN,<br><br>             Plaintiff,<br><br>      v.<br><br>DAVID LEVINE,<br><br>             Defendant. | No.  2:16-cv-00841-KJM-EFB<br><br><br><br>ORDER |

This matter is before the court on the motion to dismiss the complaint for improper venue or, in the alternative, to transfer venue, under Federal Rule of Civil Procedure 12(b)(3), and the special motion to strike the complaint under California Code of Civil Procedure § 425.16 by defendant David Levine.  Mot. Dismiss, ECF No. 12-1; Mot. Strike, ECF No. 14-2.  Plaintiff Jeffrey Wichmann opposed each motion.  Opp'n Dismiss, ECF No. 16; Opp'n Strike, ECF No. 15.

As explained below, the court denies both motions.

/////

/////

/////

/////

1

I.     BACKGROUND

     A.     Allegations

         Plaintiff is the owner of American Bottle Auctions, which appraisers, brokers, consigns, and auctions antique bottles and glass.  Compl. ¶ 6, ECF No. 1.  Plaintiff himself collects antique bottles, and is an active member of the Federation of Historical Bottle Collectors (FOHBC).  *Id.* ¶¶ 6, 11.  The FOHBC is a non-profit organization, founded in 1959 and previously known as the Antique Bottle Collectors Association; it supports collectors of historical bottles, flasks, jars and related items.  *Id.* ¶ 11.  The FOHBC conducts events in the Eastern District of California, including the National Antique Bottle Convention & Expo (the Sacramento Convention), which at the time the complaint was scheduled to be held on August 4, 2016, in Sacramento, California.  *Id.* ¶ 12.  The FOHBC invited plaintiff to the Sacramento Convention.  *Id.*

         Defendant is a collector of bottles from Owl Drug Stores, known as "Owl Drug" bottles, and other related paraphernalia produced by or for the Stores.  *Id.* ¶ 13.  He is a resident of the State of Virginia.  *Id.* ¶ 2.  Defendant publishes an online blog titled "Owl Drug Collectors Blog" and a Facebook page.[1]  *Id.* ¶ 14.  Defendant's online business, the "Owl Drug Collectors Store," conducted from his blog, sells various clothing and accessories related to Owl Drug bottles.  *Id.* ¶ 15.  Defendant has publicly stated that he "does business in Sacramento."  *Id.*  Defendant is a resident of the State of Virginia.  *Id.* ¶ 2.

         On December 16, 2015, defendant posted the following statement on his blog, referencing himself and the Sacramento Convention: "Let us share a few things about Sacramento since we do business there, and the blog director was stationed in the military and attended college there.  The selection of Sacramento for the show is questionable . . . ."  *Id.* ¶ 16.  Defendant also posted statements concerning the auction services related to conventions and

---

[1] The blog can be found at https://owldrugcollectors.wordpress.com.  Compl. ¶ 14.  The Facebook page is located at https://www.facebook.com/Owl-Drug-Collectors-271644637608/.  *Id.*

shows hosted by the FOHBC that he alleges made the Sacramento Convention site questionable. *Id.*

On January 7, 2016, defendant posted an entry on the blog regarding a bottle identical to another one involved in an investigation conducted by the state of Nevada into plaintiff's activities, among others. *Id.* ¶ 17. Through a series of blog entries over the next three months, defendant reported that certain bottles were stolen from Piper's Opera House in Virginia City, Nevada, and plaintiff, "the owner of an auction house in the Sacramento area, bought some of the stolen bottles, knowing they were stolen, then brokered a deal to sell the bottles . . . . Was that the first time or the only time Jeff Wichmann has been involved in this type of activity?" *Id.* ¶¶ 18–19. Defendant also said on his blog that plaintiff was one of the "three principal figures" mentioned in an investigative report from the state of Nevada, which defendant obtained through the Freedom of Information Act, and on which he based his postings. *Id.* ¶¶ 20–23.

Throughout his posts from February 11, 2016 to April 21, 2016, defendant continued his narrative of the theft in Virginia City and repeatedly linked plaintiff to the theft through numerous statements. Defendant's reporting culminated in a post that named the theft at the Piper's Opera House as the "Jeff Wichman[n] affair." *Id.* ¶¶ 27–38, 40–44, 47, 49, 54, 56.

B. <u>Procedural History</u>

Plaintiff filed the complaint on April 22, 2016, alleging against defendant two claims: (1) defamation per se, and (2) false light invasion of privacy. *See generally* Compl. Defendant first moved to dismiss, or, in the alternative, to transfer venue on May 16, 2016. On June 6, 2016, the court denied this first motion to dismiss without prejudice, because defendant did not meet the meet-and-confer requirement in the court's standing order, ECF No. 3-1. Minute Order, ECF No. 11. Defendant refiled the motion to dismiss the complaint on the same day. *See generally* Mot. Dismiss. Subsequently, on June 24, 2016, defendant filed the motion to strike the complaint. *See generally* Mot. Strike.

/////

/////

/////

II.     MEET AND CONFER

As noted, on June 6, 2016, defendant refiled its motion to dismiss the complaint after the court denied it without prejudice, stating he had been unaware of the standing order's requirement and noting his pro hac vice status. Mot. Dismiss Not., ECF No. 12. Once he became aware of the requirement, he contacted plaintiff's attorneys to meet and confer. *Id.*; Erlich Decl. ¶¶ 13–17, ECF No. 12-3. On June 8, 2016, counsel filed a supplemental declaration, which stated he was not able to complete the meet and confer efforts until June 7, 2016. Supp. Decl., ECF No. 13. Defendant's special motion to strike was filed with a certification that the counsel had met and conferred as required. Mot. Strike Not., ECF No. 14.

Counsel's argument that he was not aware of the court's standing order is unpersuasive. This court's standing order is not only on the docket, but also posted on this district's website.[2] Counsel's carelessness is generally not a reason to deviate from this court's requirements. However, given that meet and confer efforts have now been made with respect to the motion to dismiss, albeit tardily, and for the special motion to strike as well, the court will proceed to resolve the motions in the interest of adjudicating the matters on their merits. The court reminds the parties that any future motions filed without certification of meet and confer efforts will again be denied.

III.    MOTION TO DISMISS: RULE 12(b)(3)

A.      Improper Venue

A district court may dismiss or transfer a case "to any district or division in which it could have been brought" if venue is "wrong." 28 U.S.C. § 1406(a). Once venue is challenged, plaintiff has the burden of showing that the venue is proper in this district. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (1979). Under 28 U.S.C. § 1391, venue is appropriate in a civil action where jurisdiction is grounded on diversity of citizenship in (1) the judicial district where any of the defendants reside, if all defendants reside in the same state, (2) the judicial district in which a substantial part of the events or omissions giving rise to the

---

[2] This court's standing order can be found on the docket, ECF No. 3-1, and on http://www.caed.uscourts.gov/caednew/index.cfm/judges/all-judges/5020/standing-orders/.

1  claim occurred or a substantial part of the property that is subject to the action is situated, or (3) a
2  judicial district in which any defendant is subject to personal jurisdiction at the time the action is
3  commenced, if there is no district in which the action might otherwise be brought.  28 U.S.C.
4  § 1391(a); *see MCSI, Inc. v. Woods*, No. 02-2865, 2002 WL 32059741, at *4 (N.D. Cal. Oct. 7,
5  2002) (defamation); *cf. Cal. Brewing Company v. 3 Daughters Brewing LLC*, No. 15-2278, 2016
6  WL 1573399, at *6–7 (E.D. Cal. Apr. 19, 2016) (trademark).

"[T]he question of a federal court's competence to exercise personal jurisdiction over a defendant is distinct from the question of whether venue is proper." *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1179 (9th Cir. 2004).  "Jurisdiction is the power to adjudicate, while venue, which relates to the place where judicial authority may be exercised, is intended for the convenience of the litigants."  *Id.* (citations, internal quotations, and emphasis omitted).  Despite the jurisdictional references in both parties' briefing, *see, e.g.*, Mot. at 2; Opp'n at 8, the parties have not raised any argument suggesting the court lacks personal jurisdiction over defendant.  Instead, the dispute is whether venue is proper.

Here, the first and third provisions of the venue statute, § 1391(a), are not applicable in this case because defendant does not reside in California, and because there is at least one other district—the Eastern District of Virginia—in which this action could be brought. Similarly, because property is not at issue in this case, the second prong of the second provision does not apply.  Nevertheless, under § 1391(a)(2), venue is proper in California because a substantial part of the events or omissions giving rise to the claims occurred in California. Plaintiff alleges that the brunt of his harm was suffered here in California, and the Ninth Circuit has held that in a tort action, the "locus of the injury" constitutes a substantial part of the events giving rise to a plaintiff's claim.  *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (venue proper in Nevada because at least one of the harms suffered by plaintiffs was felt in Nevada); *cf. Diesel Power Source, L.L.C. v. Crazy Carl's Turbos Inc.*, No. 14-00826, 2015 WL 1034231, at *10 (D. Utah Mar. 10, 2015) ("[A]cts that are physically performed on the Internet can 'occur' in the forum state in order to establish proper venue.").  Therefore, venue is proper in the Eastern District of California.

B. <u>Transfer of Venue</u>

Alternatively, defendant moves to transfer venue under 28 U.S.C. § 1404. When the district court finds venue is proper, it may still exercise discretion, "[f]or the convenience of parties and witnesses, [and] in the interest of justice," to transfer an action "to any other district where it might have been brought." 28 U.S.C. § 1404(a). The Ninth Circuit has set out the following non-exclusive list of factors to consider in adjudicating a motion to transfer:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, . . . (8) the ease of access to sources of proof, (9) the presence of a forum selection clause, if any, and (10) the relevant public policy of the forum state, if any.

*Cal. Brewing Company*, 2016 WL 1573399, at *7 (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)) (internal quotations omitted).

"The Ninth Circuit requires the defendant to make a 'strong showing' of inconvenience to overcome the preference traditionally accorded a plaintiff's choice of forum." *Cal. Brewing Company*, 2016 WL 1573399, at *7 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

Here, defendant discusses briefly that he resides in the Eastern District of Virginia, his forum of choice, and that the majority of his evidence and witnesses on the issue of liability is located in Virginia. Defendant's motion does not otherwise address the other *Jones* factors to explain why transfer to the Eastern District of Virginia would be more convenient or in the interests of justice. Rather, defendant states summarily that "[t]his [c]ourt should . . . grant [his] motion in the interests of convenience and justice." Mot. at 5. Accordingly, defendant has not met his burden of showing a transfer is appropriate. *See Decker Coal*, 805 F.2d at 843. Defendant's motion to transfer venue under 28 U.S.C. § 1404(a) is DENIED.

IV. SPECIAL MOTION TO STRIKE: SECTION 425.16

A. Statute and State Court Application

The state of California enacted section 425.16 of the Code of Civil Procedure "to curtail the 'disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 3d 1172, 1178–79 (C.D. Cal. 2006) (quoting Cal. Civ. Proc. Code § 425.16(a)). Special motions to strike under this section are commonly referred to as anti-SLAPP motions. *Santana v. Cty. of Yuba*, No. 15-00794, 2016 WL 1268107, at *6 (E.D. Cal. Mar. 31, 2016) (citations omitted). "It is meant as a procedural remedy for any person sued in a so-called 'strategic lawsuit against public participation,' or SLAPP . . . ." *Id.* Specifically, section 425.16 provides as follows, in relevant part,

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1).

The California Legislature intended section 425.16 to give defendants a "cheap, early opportunity to squelch meritless litigation." *Santana*, 2016 WL 1268107, at *6 (citing *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 278 (2006)). A state court considers anti-SLAPP motions under a "summary judgment-like procedure," and proceeds in two separate stages. *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005). First, the court decides "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Soukup*, 39 Cal. 4th at 278–79 (citations and internal quotation marks omitted). Second, if the defendant has made the threshold showing, the court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* A defendant must satisfy both prongs of the anti-SLAPP statute. *Id.*

B. <u>Anti-SLAPP Motions in Federal Court</u>

When a federal district court sits in diversity, it applies federal procedure and state substantive law. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Though section 425.16 generally applies in federal courts, subsections (f) and (g)[3] of the section impose procedural limitations at odds with the Federal Rules of Civil Procedure. *Santana*, 2016 WL 1268107, at *7 (citations omitted). For example, "[s]ection 425.16 limits discovery and makes further discovery an exception, rather than the rule. Rule 56 does not limit discovery." *Id.* (citations and quotations omitted). Rather, Rule 56 "ensures that adequate discovery will occur before summary judgment is considered." *Id.* (*citing Metabolife*, 264 F.3d at 846). "For this reason, sections 425.16(f) and (g) do not apply to litigation in federal court." *Id.* (citation omitted). "Incorrect application of the federal rules is reversible error." *Id.* (citation omitted).

This inconsistency has led this court, along with others, to adopt a tiered approach to anti-SLAPP motions. *Id.* at *8. On the first tier in resolving an anti-SLAPP motion, the court determines whether there are legal deficiencies in the complaint. The court first asks whether defendant has made a "threshold showing that the challenged cause of action is one arising from protected activity." *Soukup*, 39 Cal. 4th at 278 (citation and quotation marks omitted). If the claims pass this first test, the court then "addresses the complaint's purported legal deficiencies to

---

[3] Those subsections provide as follows:

> (f) The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing.

> (g) All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

Cal. Civ. Proc. Code § 425.16(f), (g).

1   determine whether the plaintiffs have 'demonstrated a probability of prevailing on the
2   complaint.'" *Santana*, 2016 WL 1268107, at *8 (citing *Soukup*, 39 Cal. 4th at 278).  As a federal
3   court, the court "must determine the motion in a manner that complies with the standards set by
4   Federal Rules of Civil Procedure 8 and 12." *Id.* (citations and quotations omitted).

5         On the second tier, the court assesses "the plaintiff's failure to submit evidence to
6   substantiate its claims, "and "the motion is treated as a motion for summary judgment, and
7   discovery 'must be developed sufficiently to permit summary judgment under Rule 56.'" *Id.*
8   (citations omitted); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 846–47 (9th Cir. 2001)
9   (reversed to allow for further discovery); *Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d
10  1085, 1099 (N.D. Cal. 2003) ("The Court is unable to resolve this issue at this stage of the
11  proceeding, when no discovery has been permitted, because the applicability of the anti-SLAPP
12  statute turns on disputed questions of fact.").

13      C.    <u>Discussion</u>

14        Given that no discovery has yet occurred, the court construes the motion to strike
15  as based on legal deficiencies in the complaint, and considers the first tier question whether
16  defendant has made a threshold showing that the challenged claim is based on a protected
17  activity.  To the extent defendant asks the court to consider evidence outside of the complaint, the
18  court declines to do so at this time.  Defendant may renew the motion after discovery.

19        In conducting its analysis, the court bears in mid that the anti-SLAPP statute
20  protects "any written or oral statement or writing made in a place open to the public or a public
21  forum in connection with an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(3).

22        1.    <u>Public Forum</u>

23      "[A] public forum is not limited to a physical setting, but also includes other
24  forms of public communication such as electronic communication media like the internet*.*"
25  *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1107 (C.D. Cal. 2004) (quoting
26  *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1106 (2001)).  Here, the allegedly
27  defamatory statements giving rise to plaintiff's action were published on defendant's website,
28  which is widely accessible by the public.  As such, defendant's website constitutes a public forum

under the anti-SLAPP statute. *See New.Net*, 356 F. Supp. 2d at 1107 ("[C]ourts have uniformly held, or deeming the proposition obvious, simply assumed that internet venues to which members of the public have relatively easy access constitute a 'public forum' or a place 'open to the public' within the meaning of section 425.16.").

### 2. Public Interest

Under California law, speech is considered to be "in connection with an issue of public interest" if it concerns: (i) a person in the public eye, (ii) "conduct that could directly affect a large number of people beyond the direct participants," or (iii) "a topic of widespread, public interest." *Rivero v. Am. Fed'n of State, Cty., and Mun. Employees, AFL–CIO*, 105 Cal. App. 4th 913, 924 (2003). "[T]he definition of "public interest" within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." *Id.* at 920. This case does not fall within the common law definition. Here, while the court does not doubt the parties' passion for bottle collecting, defendant's speech regarding plaintiff, plaintiff's collecting and selling practices, and the FOHBC's convention location is not an issue of general public interest. These issues do not affect any broad segment of society or a community as a governmental entity's action would. Defendant argues that consumer information, when it affects a large number of people, is information concerning the public interest even if the business practices at issue do not affect a large number of people. Mot. at 9 (citing *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 989 (2004)).

In *Wilbanks*, at issue were statements that defendant made with respect to viatical[4] brokers. Specifically, defendant identified brokers on her websites whom she believed had engaged in unethical or questionable practices, and provided information for choosing good brokers. *Id.* at 889–90, 899. The California Court of Appeals in *Wilbanks* held that while the information did not concern a person in the public eye, nor was it a topic of widespread, public

---

[4] "[V]iaticals are arrangements that allow dying persons with life insurance policies to sell their policies to investors for a percentage of the death benefits." *Wilbanks*, 121 Cal. App. 4th at 889.

10

1    interest, it did affect a large number of people. *Id.* at 898. In reaching that conclusion, the

2    appellate court cited to *DuPont Merck Pharm. Co. v. Superior Court*, 78 Cal. App. 4th 562, 567

3    (2000), where the statements at issue concerned the commercial marketing of "Coumadin, an

4    anticoagulant that was used by more than 1.8 million Americans for the prevention and treatment

5    of life-threatening conditions." *Id.* at 899. Importantly, the court in *Wilbanks* found that like the

6    pharmaceutical industry sales in *DuPont Merck Pharm. Co.*, the viatical industry also touches a

7    large number of persons, exemplified by the *Wilbanks* plaintiffs' business that generated an

8    average monthly income of $58,333 before the defendant's statements about the brokers appeared

9    on her website. *Id.*

10   This case is distinguishable from both *Wilbanks* and *DuPont Merck Pharm. Co.* in

11   that nothing before the court shows the business practice of plaintiff affects a large number of

12   people, or that consumer information provided on defendant's website does either. As the court

13   in *Wilbanks* aptly pointed out, while the individual businesses of the plaintiff did not affect a large

14   number of people, the overall viatical industry did. *See Wilbanks*, 121 Cal. App. 4th at 899.

15   The other examples provided by defendant regarding a union election, Mot. at 9

16   (citing *Macias v. Hartwell*, 55 Cal. App. 4th 669, 674–75 (1997)), and a homeowners' association

17   are similarly inapposite, *id.* (citing *Damon Ocean Hills Journalism Club*, 85 Cal. App. 4th 468,

18   474–75 (2000)). As the court pointed out in *Macias*, speech with respect to the election of the

19   president to a large and powerful organization may impact the lives of many individuals.

20   55 Cal. App. 4th at 673–74. The sentiment was echoed in *Damon*, where the court found that

21   speech concerning how a community of more than 3,000 individuals would be governed is an

22   inherently political question that affects each individual and the community as a whole.

23   85 Cal. App. 4th at 479. Here, defendant asks too much of the court to find that the FOHBC, a

24   non-profit organization supporting collectors of historical bottles, flasks, jars and related items,

25   Compl. ¶ 11, is a large and powerful organization that impacts the lives of many individuals.[5]

---

[5] Defendant also points to the 2012 minutes for a FOHBC's Board of Directors conference call meeting, Def.'s Ex. 1, ECF No. 14-4, and a screenshot of FOHBC's Facebook page, Def.'s Ex. 2, ECF No. 14-5, as support for his motion. The court does not consider these exhibits at this time as they are beyond the parameters of the complaint and not judicially noticeable. *See* Fed.

1    Defendant has not shown the speech here was made in connection with a public
2 interest.  The court need not reach whether the plaintiff has demonstrated a probability of
3 prevailing on his claims, because defendant has not met the threshold requirement to show the
4 challenged cause of action is based on a protected activity.
5    Defendant's special motion to strike is DENIED without prejudice.
6 V.    CONCLUSION
7    Defendant's motion to dismiss for improper venue or, in the alternative, to transfer
8 venue and special motion to strike are DENIED.  This order resolves ECF Nos. 12 and 14.
9    IT IS SO ORDERED.
10 DATED:  August 15, 2016.

_____
UNITED STATES DISTRICT JUDGE

---

R. Evid. 201(b). Even if the court considers the exhibits, minutes to a conference call by the FOHBC's Board of Director to plan a membership drive to reach 2,000 members and a screenshot of the FOHBC's Facebook page showing 2,419 "likes" are insufficient to demonstrate public interest.  Defendant provides no other support to demonstrate that the FOHBC actually reached its intended target of 2,000 new members.  In addition, the fact that 2,419 members of Facebook liked a page does not demonstrate interest by a broad enough segment of the community, given the more than one billion active daily Facebook users.  *See* https://newsroom.fb.com/company-info/ (last visited Aug. 15, 2016).